UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS W. TREFNY,<br>     Plaintiff<br>v.<br>HYANNIS HARBOR TOURS, INC.,<br>     Defendant | CIVIL ACTION NO. 04-10798-NG |

## MOTION FOR SUMMARY JUDGMENT

The defendant Hyannis Harbor Tours, Inc. hereby moves for judgment as a matter of law against the plaintiff, Thomas W. Trefny, as to all of his claims — all pursuant to Fed. R. Civ. P. 56. This submission contains Hyannis' Statement of Material Facts — facts that entitle Hyannis to judgment as a matter of law on the merits of Trefny's claims, as amplified in Hyannis' accompanying memorandum of law.

Briefly, even with the legal advantages that come with being a seaman, Trefny cannot establish essential elements of his case. He has claimed that his foot slipped while he was proceeding along a gangway leading from his ship's dock at Nantucket to the main deck of the vessel. But he cannot establish — not even through his own testimony — that there was any foreign object on the gangway, or anything else wrong with it.

Based on these undisputed facts, Hyannis is entitled to judgment as a matter of law.

## KEY TO SUPPORTING EXHIBITS

The following documents are attached to this motion. Hyannis hereby incorporates by reference the content of the following attachments, as evidentiary support for the statements of material fact that follow:

    Exhibit 1    Deposition of Thomas W. Trefny
    Exhibit 2    Declaration of Robert Bazydlo
    Exhibit 3    Hyannis' Answers to Trefny's Interrogatories
    Exhibit 4    Trefny's Answers to Hyannis' Interrogatories (December 13, 2004)

## STATEMENT OF MATERIAL FACTS AS TO
## WHICH THERE IS NO GENUINE DISPUTE

1. Trefny's claim of injury is based upon the assertion that his foot slipped while proceeding along the gangway from the dock in Hyannis to the deck of his vessel, the *Grey Lady II*. Exhibit 1, Deposition of Thomas W. Trefny, Page 79, line 12 through Page 80, line 2[1].

2. Following his first perception of pain, Trefny has testified that he went back and forth across the same gangway at least twice — once to return to the dock to speak to the captain, and once more to return aboard the vessel for the return trip from Nantucket to Hyannis. Exhibit 1, Deposition of Thomas W. Trefny, Page 82, lines 6-22[2].

---

[1] 00079
```
12    Q   Okay.
13            Now, where was it that you -- where
14   were you physically, what location were you with
15   respect to this vessel when you became aware that
16   you were hurt on the day of this incident?
17    A   I was transiting up the gangway.  I was
18   returning to the boat to take off another luggage
19   cart.
20    Q   Okay.
21            And what happened?
22    A   As I was running up, I planted my right
23   foot, and I either stepped on something, slipped on
24   something that caused my -- my knee to buckle, and
00080
 1   it went out, and I fell forward into the railing
 2   and that's the time I injured myself.
```

[2] 00082
```
 6    Q   Okay.
 7            And once you got on board, you stayed
 8   in one place?
 9    A   I stayed in one spot to typically -- to
10   look at what happened, to see if there was any
11   blood or anything.
12            I was assessing the injury, and
13   immediately following that, I stood up and I made
14   my way back out to the pier with the captain and --
15   advising him what happened.
16            And it was that point we -- the
17   luggage was being brought on and the passengers
18   were embarking.
19            Immediately following that, we got
```

2

       3.       Nevertheless, Trefny has no evidence of what, if anything, was on the gangway. Exhibit 1, Deposition of Thomas W. Trefny, Page 81, line 9 through Page 81, line 20[3]; *also* Page 156, line 18, through Page 157, line 2[4]; *also* Page 95, line 23, through Page 96, line 8[5].

---

```
20  underway.  I went up to the wheel house with the
21  captain.  I sat down.  We talked about what took
22  place, and I sat out the rest of the trip.
```

[3] 00081
```
 9              Now, what was it that -- you
10  mentioned something that you reckon caused you to
11  slip.
12              What was that?
13     A   I don't know what the object or substance
14  was.  There was something that caused me to -- that
15  caused my knee to buckle.
16     Q   Okay.
17              You never saw anything?
18     A   I did not.
19     Q   And nobody else did, as far as you know?
20     A   Not that I recall, as far as I know.
```

[4] 00156
```
18     Q   Okay.
19              You don't know there was actually
20  something on the gangway of the GREY LADY that
21  night that caused your foot to slip, true?
22     A   I did not see anything.
23     Q   Okay.
24              So that's as far as your knowledge
00157
 1  goes, correct?
 2     A   Correct.
```

[5] 00095
```
23     Q   But no one knows what was on the gangway,
24  correct?
00096
 1     A   I don't know what was on the gangway.
 2     Q   Okay.
 3              You're not aware of anyone who does?
 4     A   I do [sic] not.
 5     Q   You're not aware of anyone else who has
 6  indicated any belief that there was anything
 7  foreign or improper on the gangway, correct?
 8     A   I do not know.
```

4.     There was nothing wrong with the gangway.  Exhibit 2, Declaration of Robert Bazydlo, ¶5[6]

5.     Trefny acknowledged to several people that his knee "had just gone out." Exhibit 1, Deposition of Thomas W. Trefny, Page 97, lines 5-13[7].  Although he immediately went to the captain to report his physical deficit, he never told the captain that there was anything amiss with the gangway.  Exhibit 2, Declaration of Robert Bazydlo, ¶3[8].  Exhibit 1, Deposition of Thomas W. Trefny, Page 90, line 23 through Page 92, line 5[9].

---

[6] "The gangway was in its normal condition, with no foreign object or substance on it, and had no damage, change, or modification to its ordinary condition.  The gangway was not defective or abnormal in any way."

[7] 00097
```
 5   Q   What you actually told several people is
 6   that your knee had just gone out, correct?
 7   A   To that effect, yes.
 8   Q   Okay.
 9   A   Exact verbiage, I don't recall, but...
10   Q   Okay.
11       Not that you had slipped or tripped
12   on anything?
13   A   I don't recall the exact verbiage.
```

[8] "He didn't say or suggest that anything about the vessel or the gangway played any role in his problem."

[9] 00090
```
23   Q   Well, let me back up.
24       You seem to be under the belief that
 00091
 1   there was something on the gangway that shouldn't
 2   have been there that caused your foot to slip.
 3       Do I have that right?
 4   A   Yes.
 5   Q   Okay.
 6       So what, if anything, did you say to
 7   the captain to see to it that whatever it was that
 8   you felt caused you to slip wouldn't do the same
 9   thing to a passenger in the next few moments?
10   A   Just what I told him.  I told him I
11   twisted my knee on the gangway and that I would --
12   now had alerted him that there was something not
13   right.
14   Q   But you didn't tell him that you had
15   stumbled or slipped on something?
```

6. Trefny's complaints about the light on the gangway and the schedule of the vessel relate to his alleged injury through the alleged presence of a foreign object on the gangway. <u>Exhibit 1</u>, Deposition of Thomas W. Trefny, Page 88, line 23 through Page 89, line 11[10].

7. Trefny has not made any out-of-pocket payments for medical expenses. <u>Exhibit 1</u>, Deposition of Thomas W. Trefny, Page 135, lines 2-6[11]. Hyannis has paid all of Trefny's medical

---

```
16     A   I don't recall the exact wording of it,
17   but I told him just what I -- what I've said.
18     Q   You did not tell him that there was
19   something, something of -- some foreign object on
20   the gangway, correct?
21     A   I told him I twisted my knee on the
22   gangway.
23     Q   Okay.
24         But you didn't tell him that you
00092
 1   twisted your knee because of something that should
 2   not have been on the gangway, in your view,
 3   correct?
 4     A   I don't recall saying anything specific
 5   to that -- to that nature.
```

[10] 
```
00088
23     Q   Okay.
24         How is it that the ship could have
00089
 1   prevented this accident from happening?
 2     A   Better illumination. Reduce the need for
 3   rushing and hurrying in the turnarounds.
 4     Q   And how is it that illumination would
 5   have made a difference?
 6     A   Because I would have been able to see the
 7   gangway clearly enough to see what, if anything,
 8   was on it. See if there was -- at the time of the
 9   accident, I recall the illumination to be not
10   adequate. Could not see every bit of the surface
11   of the gangway.
```

[11] 
```
00135
 2     Q   You haven't paid any out-of-pocket
 3   expenses with respect to any medical treatment
 4   associated -- that you associate with the incident
 5   on the GREY LADY, correct?
 6     A   Correct.
```

expenses with which Hyannis has been presented.  Exhibit 3, Hyannis' Answer to Trefny's Interrogatory No. 14 (as to third affirmative defense)[12].

    8.    Trefny reached the point of maximum medical recovery as of January 2003.  Exhibit 1, Deposition of Thomas W. Trefny, Page 7, line 8 through Page 8, line 17[13]; also Page 118, lines 15

---

[12] "As to the Third, Hyannis has made payment of all Trefny's medical bills and has paid maintenance through the time that he was again fit for duty, and indeed, clamoring to be mobilized to the middle east."

[13]  00007
```
 8    A   To date, I have no complaints regarding
 9   the right knee.
10    Q   Okay.
11            Now, recently Mr. Anderson provided
12   me with some paperwork that went back to, I
13   believe, early 2003 that you submitted to the Navy
14   in order to straighten out your medical status with
15   them.  Looked like a submission that was asking to
16   be reinstated to a normal medical situation.
17            You recall what I'm talking about?
18    A   That's correct, yes.
19    Q   I think it was January of 2003; does that
20   sound right?
21    A   Yes, sir.
22    Q   Okay.
23            And then from that time up until now,
24   have you experienced any difficulties associated
00008
 1   with your right knee?
 2    A   No serious difficulties.
 3    Q   I'm sorry?
 4    A   No serious difficulties.
 5    Q   Okay.
 6            Any difficulties at all?
 7    A   Just some discomfort at times, but
 8   otherwise, it's fully functional, stable and
 9   strong.
10    Q   Okay.
11            And when you say discomfort, this
12   would be, for example, if you were on a long
13   airline flight, if you're sort of in a confined
14   situation, is that the kind of discomfort you mean?
15    A   No, discomfort would be exercising for
16   prolonged periods of time.
17            But generally, no complaints.
```

through 22[14]; *also* Page 120, line 20 through Page 121, line 2[15]. Hyannis has made payments of cure through at least the date of Trefny's attainment of maximum medical recovery. Exhibit 3, Hyannis' Answer to Trefny's Interrogatory No. 14 (as to third affirmative defense)[16].

**WHEREFORE, INASMUCH AS** the application of the governing law to the above undisputed facts entitles it to judgment as a matter of law, Hyannis respectfully urges that judgment enter in its favor, with any additional relief that the Court deems appropriate.

**CERTIFICATE OF SERVICE:** Undersigned counsel hereby certifies that s/he has this day provided a true copy of this document to all counsel of record and all parties appearing pro se (if any) by the method indicated alongside their respective names as shown below.

Dated: April 15, 2005

*served upon:*
David Anderson, Esq.   *(By Hand)*
Latti & Associates LLP
30-31 Union Wharf
Boston, Massachusetts 02109

**HYANNIS HARBOR TOURS, INC.**
By its attorneys,

   /s/ Michael Rauworth
Michael J. Rauworth,  BBO# 547711
**CETRULO & CAPONE LLP**
World Trade Center East
Two Seaport Lane — 10th Floor
Boston, Massachusetts 02210
Tel: (617) 217-5500; fax: 617-217-5200

---

[14] 00118
15    Q    And you were legally qualified to go back
16   to seagoing employment all through 2003, correct?
17    A    Yes.
18    Q    Your license never lapsed?
19    A    No.
20    Q    And you, in fact, had to get a physical
21   in order to renew your license, correct?
22    A    Yes.

[15] 00120
20    Q    Why didn't you go back to work at Maersk
21   after -- during or after January of 2003?
22    A    At the time, I was -- the Navy had --
23   despite being cleared for fit for duty by the
24   doctor, the Navy assigned me temporarily not
00121
 1   physically qualified for duty, and I was making
 2   efforts to be brought back on full duty.

[16] "As to the Third, Hyannis has made payment of all Trefny's medical bills and has paid maintenance through the time that he was again fit for duty, and indeed, clamoring to be mobilized to the middle east."