UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS W. TREFNY,<br>　　　Plaintiff<br>v.<br>HYANNIS HARBOR TOURS, INC.,<br>　　　　　Defendant | CIVIL ACTION NO. 04-10798-NG |

**DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S INTERROGATORIES**

　　　Defendant Hyannis Harbor Tours hereby responds pursuant to Fed. R. Civ. P. 33 with its objections and responses to the interrogatories of Plaintiff Thomas Trefny.

**General Objection**

　　　Defendant objects generally to any part of the definitions, instructions, or individual interrogatories that call for performance beyond that required by Fed. R. Civ. P. 33.  In addition, Defendant objects generally to any discovery request in any form that seeks material not reasonably calculated to lead to the discovery of evidence admissible on the limited issues raised by the pleadings, and further objects to any aspect of the proponent's discovery request that operates to broaden the scope of the pleadings, either directly or by implication.  Defendant further objects to any discovery request that seeks material protected by any privilege, including without limitation the work-product protection or the attorney-client privilege.  These objections are stated in this general form in the interests of clarity and brevity of the individual responses that follow, but are specifically incorporated into each response below, as if the entire text had been set forth at length at each individual location.  Where Defendant decides to provide information in spite of an objection, it does so without prejudice or waiver, as a matter of a simple decision not to litigate the particular point in question, in order to avoid unnecessary controversy on points where Defendant, in its sole discretion, deems that such controversy is not in its interests.  Any such disclosure does not amount to any admission or concession as to the merits of the discovery request in question, nor of Defendant 's objection thereto under any circumstances.  In particular, any such disclosure does not constitute any affirmative use of the information in question for Defendant 's purposes in the litigation.  Since pretrial discovery is not yet completed, Defendant expressly reserves the right to supplement this response as additional information becomes known through the discovery process.

**INDIVIDUAL OBJECTIONS AND/OR RESPONSES**

**INTERROGATORY NO. 1**
　　　Please state:
　　　a. If the Defendant is a natural person, please state the Defendants full name, residential address, and the business address;
　　　b.　　If the Defendant is a publicly traded corporation, please state the exact corporate name, the state of incorporation, the Defendant corporation's address; and identify all officers, directors and any parent or subsidiary corporations.
　　　c.　　If the Defendant is not a publicly traded corporation, please state the exact corporate name, the state of incorporation, the Defendant corporation's address; and identify all

officers, directors, and shareholders of the Defendant corporation and any parent or subsidiary corporations.

       d.      If the Defendant is a partnership (including limited partnerships and limited liability partnerships), please state the exact partnership name, the business address of the partnership and the full name and residential address of each partner.

       e.      If the Defendant is not a natural person, or a corporation or a partnership, please describe the type of entity the Defendant is, and identify all executive officers of the Defendant's organization.

**OBJECTION AND/OR ANSWER NO. 1**

Hyannis objects to the extent that the materials requested contain privileged material. Although Hyannis objects to plaintiff's use of it, Hyannis asserts and claims the benefit of the objection that the information sought "is not calculated to lead to the discovery of relevant information relating to any claim or defense in this case," but only to the extent that the said objection is ruled to be available to the plaintiff; otherwise Hyannis narrows its objection on the grounds of relevance to the extent that it is otherwise recognized in law.

Without waiver, limitation or prejudice as to any of its objections, Hyannis says that it is a Massachusetts corporation. Its stock is not publicly-traded. Its officers are as listed in the attached printout, and its directors are as listed on the attached letterhead.

**INTERROGATORY NO. 2**

With respect to the vessel named in the Plaintiff's Complaint, please identify, as of the date of the alleged incident:
       a.      the owner of said vessel;
       b.      the operator of said vessel;
       c.      the controller of said vessel; and
       d.      the charterer (if any) of said vessel.

**OBJECTION AND/OR ANSWER NO. 2**

Without waiver, limitation or prejudice as to any of its objections, Hyannis says that the *Grey Lady II* was owned and operated by Hyannis on the date in question. There was no charter in effect. The meaning of the phrase "controller of said vessel" has no reliable meaning in the maritime industry, nor to Hyannis, which makes it impossible to respond coherently.

**INTERROGATORY NO. 3**

Based upon information the Defendant has acquired either directly or through communications with its agents, servants, employees, investigators, adjusters, legal representative, the Plaintiff, and/or any other person, please describe in detail the Defendant's understanding of how the alleged incident occurred, setting forth the date, location, time, weather conditions, sequence of events, and the cause (or causes) of said incident.

**OBJECTION AND/OR ANSWER NO. 3**

Without waiver, limitation or prejudice as to any of its objections, Hyannis says that its knowledge of the event is drawn from comments that Thomas Trefny made to crewmembers of the vessel, to healthcare providers, and to Hyannis management in the wake of the incident. According to those accounts, Trefny stated that he was traversing the ramp between the dock and

the vessel in Nantucket, when his right knee suddenly "gave out" or "went out." According to his comments to various witnesses, this occurred at approximately 10 p.m. on July 26, 2002. Although weather has not been alleged to have had a role, the conditions appear to have been overcast and warm, as further expressed in the entries in the vessel's log. No one, including the plaintiff, has identified any cause for this occurrence.

**INTERROGATORY NO. 4**
Identify all log entries, Coast Guard reports, accident reports, injury reports, captain's report, reports of crew members, investigative reports or any other communications, writing or report concerning the alleged incident, stating for each, whether said report or writing was prepared in anticipation of litigation as defined by Fed.R.Civ.P. 26(B)(3). In responding to this interrogatory please use the definition of the word "identify" set forth in paragraph iv of the Definitions section of these interrogatories.

**OBJECTION AND/OR ANSWER NO. 4**
Objection. This interrogatory calls for witness statements immune from discovery pursuant to the work-product doctrine of *Hickman v. Taylor* and Rule 26.

Without waiver, limitation or prejudice as to any of its objections, Hyannis says that it elects to respond to this interrogatory by providing non-privileged documents pursuant to Rule 33(d).

**INTERROGATORY NO. 5**
Identify all officers and members of the crew of the Defendant's vessel, at the time of the alleged incident, also including within your answer, the capacity in which each officer/crew member served the vessel (i.e. Captain, Mate, Cook, etc.), and whether they witnessed the alleged incident.
In responding to this interrogatory please use the definition of the work "identify" set forth in paragraph iii of the Definitions section of these interrogatories.

**OBJECTION AND/OR ANSWER NO. 5**
Without waiver, limitation or prejudice as to any of its objections, Hyannis says that the crew members on the day in question were as reported in Hyannis' initial disclosures.

None of the other crew members report having had the plaintiff in view as he traversed the ramp and when he claims his knee began to hurt. The master spoke to the plaintiff immediately after he left the ramp following the inception of his discomfort, and the deckhand spoke to him shortly thereafter, at the outset of the return trip from Nantucket to Hyannis.

**INTERROGATORY NO. 6**
Please itemize all payments of maintenance & cure benefits paid by the Defendant to, or on behalf of, the Plaintiff, setting forth the date of each payment, the amount of each payment and to whom each payment was made.

**OBJECTION AND/OR ANSWER NO. 6**
Without waiver, limitation or prejudice as to any of its objections, Hyannis says that it elects to respond to this interrogatory by providing documents pursuant to Rule 33(d).

3.

**INTERROGATORY NO. 7**

If the Defendant has not provided maintenance & cure benefits, if the Defendant has delayed provision of maintenance & cure benefits for more than thirty days after a request for benefits was made, or if the Defendant has discontinued such provision of maintenance & cure benefits, please state the basis upon which the Defendant relies for its failure to provide maintenance & cure, its delay in providing maintenance & cure and/or its discontinuance of the said maintenance and cure benefits.

**OBJECTION AND/OR ANSWER NO. 7**

Objection.  This interrogatory improperly assumes facts not in evidence, namely that Hyannis has improperly failed, or indeed failed *at all*, to pay maintenance and/or cure.

Without waiver, limitation or prejudice as to any of its objections, Hyannis says that it had paid all of plaintiffs medical bills that it has been made aware of.  In addition, it made maintenance payments from the inception of plaintiff's complaints until February 13, 2003, at a time when plaintiff's doctor had declared him fully fit to return to duty, and when plaintiff was actively campaigning to have the Naval Reserve restore him to unrestricted medical status, in his effort to be deployed overseas.

**INTERROGATORY NO. 8**

If Defendant was not present at the time of the alleged incident, please state:
    a.    whether Defendant had notice or knowledge of said alleged incident; and
    b.    when, where, in what manner and from whom such notice or knowledge of the alleged incident was received or acquired.

**OBJECTION AND/OR ANSWER NO. 8**

Although Hyannis objects to plaintiff's use of it, Hyannis asserts and claims the benefit of the objection that the information sought "is not calculated to lead to the discovery of relevant information relating to any claim or defense in this case," but only to the extent that the said objection is ruled to be available to the plaintiff;  otherwise Hyannis narrows its objection on the grounds of relevance to the extent that it is otherwise recognized in law.

Without waiver, limitation or prejudice as to any of its objections, Hyannis says that, as a corporation, it was impossible for it to have been physically "present" at the site of the claimed injuries, as a natural person could be.  Trefny reported to Murray Scudder by voicemail in the early hours of July 27.  In addition, see Response No. 5.

**INTERROGATORY NO. 9**

Identify any communications, statements and/or admissions made by the Plaintiff to anyone concerning:  1) the alleged incident; 2) the injuries alleged in plaintiff's complaint; and/or 3) the damages alleged in plaintiff's complaint.  Please include within your answer:
    a.    the date said communication was made;
    b.    the name and address of the person to whom said communication was made;
    c.    where said communication was made;
    d.    the name and address of each person present at the time said communication was made;
    e.    the precise contents of the communication;

  f. if said communication was written, recorded, or transcribed, please state the present location of said writing or transcription.

**OBJECTION AND/OR ANSWER NO. 9**
  Without waiver, limitation or prejudice as to any of its objections, Hyannis says that plaintiff participated in a telephone interview with Frank Sweeney as reflected in the attached transcript, and testified at a deposition, the transcript of which his counsel now has. Hyannis is unaware of any other statement.

**INTERROGATORY NO. 10**
  Identify all written reports, recorded conversations, and/or statements (signed or unsigned), and all memoranda of statements, made by any person at any time, relating to: 1) alleged incident; 2) the cause of the alleged incident; 3) the Plaintiff's alleged injuries; and/or 4) the Plaintiff's alleged damages. In responding to this interrogatory please use the definition of the word "identify" set forth in paragraph iv of the Definitions section of these interrogatories.

**OBJECTION AND/OR ANSWER NO. 10**
  Objection. Apart from materials already produced to the plaintiff as part of Hyannis' Initial Disclosures, the information sought is immune from discovery pursuant to the work-product doctrine of *Hickman v. Taylor* and Rule 26.

**INTERROGATORY NO. 11**
  Identify all photographs, video tapes, ships plans, and/or blueprints of the vessel named in Plaintiffs complaint, which were made, drawn, taken and/or developed within the past 10 years.

**OBJECTION AND/OR ANSWER NO. 11**
  Without waiver, limitation or prejudice as to any of its objections, Hyannis says that it elects to respond to this interrogatory by making available documents within its possession pursuant to Rule 33(d).

**INTERROGATORY NO. 12**
  List each occasion (during the time period commencing five years prior to the date of Plaintiffs alleged incident and extending through to the present), that the vessel named within Plaintiff's complaint was inspected and/or surveyed by any person other than: A) the Defendant; B) a master or member of the crew of the vessel. Please include within your answer the date in which the vessel was inspected and/or surveyed, and identify the person who performed said inspection and/or survey.

**OBJECTION AND/OR ANSWER NO. 12**
  Objection; the term "survey" is susceptible of several meanings in the context of this interrogatory, and it is ambiguous for this reason.

  Without waiver, limitation or prejudice as to any of its objections, Hyannis says that it elects to respond to this interrogatory by providing, pursuant to Rule 33(d), the reports of third-party professional marine surveyors as to surveys accomplished with respect to the vessel.

**INTERROGATORY NO. 13**

If, with respect to the alleged incident or the Plaintiffs alleged injuries and damages, the Defendant claims that the Plaintiff was: A) contributorily negligent; B) failed to exercise reasonable care for his own safety; C) breached a duty of care owned to himself and/or others; or D) or failed to mitigate his damages, then please state the basis of each such claim.

**OBJECTION AND/OR ANSWER NO. 13**

Without waiver, limitation or prejudice as to any of its objections, Hyannis says as follows:

The basis for the answer to this interrogatory is well-documented in Trefny's deposition testimony, in which he acknowledged that he was the mate of the *Grey Lady II*, and as such had responsibility for the safety of its passenger areas (including the ramp in question) and authority over the other members of the crew (aside from the captain) to assure that those areas were kept safe. He had extensive experience as a leader of large crews aboard large merchant ships, carrying out comparable duties of a chief mate on a much larger and more demanding vessel.

As such, he had the primary duty to insure that walking surfaces of the vessel and around the vessel were safe to walk on, both for passengers and for crew members. He also was in charge of managing the safe embarkation and debarkation of passengers and their luggage. He acknowledged that he did not inspect or check the ramp during the in-port process at Nantucket, during a time when passengers and baggage left the vessel and when passengers and baggage came back aboard the vessel.

In addition, he has claimed that the lighting was inadequate at the location in question (which Hyannis disputes). Yet despite his extensive experience as a chief officer of large, government-owned merchant ships, he did nothing to report his views to the vessel's management office, nor to arrange for the rigging of additional lights. Moreover, despite his assertion that he himself *believed* that the lighting was inadequate, plaintiff did nothing to provide for his own safety under the circumstances, such as — to take just one example — to make use of a flashlight in going across the ramp.

A similar analysis applies to his contention that the pace of the work was too fast (which Hyannis likewise disputes).

The foregoing points apply to items A through C of the interrogatory.

The plaintiff failed to mitigate his damages by failing to seek any kind of work during the whole of the period from the end of July 2002 through January 2003, a time when his own doctor declared him fit for duty. Nevertheless, during this time, he was conducting many activities that reflected his fitness to perform some kind of work. In addition, starting as of January 2003, despite being declared fully fit for duty, he failed to take work that was readily available to him through the American Maritime Officers Union and through Maersk Shipping, his previous employer. Despite this well-paid work being available to him, throughout 2003, he worked instead in a much lower-paying position.

**INTERROGATORY NO. 14**
State the basis of the affirmative defense(s) raised in Defendant's Answer to Plaintiff's Complaint.

**OBJECTION AND/OR ANSWER NO. 14**
As to the First, Hyannis exercised due diligence to make the vessel seaworthy at the beginning of its voyage, and the incident occurred without its privity or knowledge, and its liability is accordingly limited per the statute.

As to the Second, see Response No. 13.

As to the Third, Hyannis has made payment of all Trefny's medical bills and has paid maintenance through the time that he was again fit for duty, and indeed, clamoring to be mobilized to the middle east.

As to the Fourth see Response No. 13; Trefny himself had an affirmative obligation to insure that there was no object on the ramp in question that would cause someone to slip, and if such an object existed, it was due to his own lapse in his job responsibilities.

As to the Fifth, see Response No. 13.

As to the Sixth, assuming Trefny slipped on some object (as he seems to claim), if such an object had been dropped onto the ramp by a departing or arriving passenger, or by a passenger standing on the deck of the vessel above, immediately before Trefny's transit of the ramp, his injury would have been due to the acts of that individual alone, putting to one side (for the moment) his own obligation as mate to have kept the ramp free from such debris.

As to the Seventh, Trefny had a direct obligation as the mate of the vessel to have made sure that slippery conditions on the ramp did not arise. To the extent such a condition *did* exist on the vessel, he is responsible for it as a failure to perform his own duties.

**INTERROGATORY NO. 15**
Please identify each person who was a witness to the events immediately preceding, during, and/or immediately after the alleged incident.
In responding to this interrogatory please use the definition of the word "identify" set forth in paragraph iii of the Definitions section of these interrogatories.

**OBJECTION AND/OR ANSWER NO. 15**
The other three members of the vessel's complement have stated that they were present in the general vicinity (*i.e.*, aboard the vessel or on the dock) of the site where Trefny claims he was hurt. But none of them reported seeing him fall or be hurt or experience any incident. Later, some of them heard him complain of discomfort in his knee.

**INTERROGATORY NO. 16**
Please state the names, addresses, and expected testimony of each expert witness who the Defendant may call at trial, including in your answer:
a.    the subject matter on which the expert is expected to testify;

7.

      b.    the education, training and/or expertise that qualifies said expert witness as an expert on the subject matter;
      c.    the specific opinions and/or facts to be expressed by the expert;
      d.    a complete summary of the grounds for each opinion to be expressed at trial;
      e.    identify all documents relied upon by the expert in forming his opinions;
      f.    set forth all facts relied upon by the expert when forming his opinions.

**OBJECTION AND/OR ANSWER NO. 16**

No Expert Witnesses have been retained as yet.

**INTERROGATORY NO. 17**

If the Defendant claims that it is entitled to limit its liability pursuant to 46 U.S.C. 183, please state:
      a.    the value of the vessel at the conclusion of the voyage upon which the alleged incident occurred;
      b.    the value of the freight then pending on vessel at the conclusion of the voyage upon which the alleged incident occurred;
      c.    the basis for the above valuations.

**OBJECTION AND/OR ANSWER NO. 17**

The value at the time was over $4 million dollars, as is reflected in survey reports on the vessel which are being separately provided. There was no pending freight, since the vessel did not carry any cargo to begin with, and moreover since it had discharged all of its passengers on the Hyannis- Nantucket trip, and had not begun its Nantucket-Hyannis run.

**INTERROGATORY NO. 18**

With respect to this civil action, please list the names of all natural persons who the Defendant claims are presented by Counsel for the Defendant.

**OBJECTION AND/OR ANSWER NO. 18**

Hyannis objects to the extent that the materials requested contain privileged material. Although Hyannis objects to plaintiff's use of it, Hyannis asserts and claims the benefit of the objection that the information sought "is not calculated to lead to the discovery of relevant information relating to any claim or defense in this case," but only to the extent that the said objection is ruled to be available to the plaintiff; otherwise Hyannis narrows its objection on the grounds of relevance to the extent that it is otherwise recognized in law.

Without waiver, limitation or prejudice as to any of its objections, Hyannis says that, as a corporation, does not control the legal choices of natural persons.

On behalf of the above-named Defendant Hyannis Harbor Tours, Inc.("Hyannis") in the above-entitled action, I have read the foregoing answers to interrogatories. Said answers were prepared by or with the assistance of co-workers with relevant information, and with the assistance and advice of counsel. The answers set forth herein, subject to inadvertent or undiscovered errors or omissions, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, thus far discovered in the course of the preparation of these answers, and currently available to Hyannis. Consequently, Hyannis reserves the right to make any changes in or additions to any of these answers if it appears at any time that errors or omissions have been made therein or that more accurate or complete information has become available. Subject to the limitations set forth herein, the said answers are true to the best of my present knowledge, information and belief.

Signed under the penalties of perjury this 10th day of January, 2005.

**HYANNIS HARBOR TOURS, INC.**

   /s/ R. Murray Scudder
R. Murray Scudder, Vice President

**CERTIFICATE OF SERVICE:** Undersigned counsel hereby certifies that s/he has this day provided a true copy of this document to all counsel of record and all parties appearing pro se (if any) by the method indicated alongside their respective names as shown below.

Dated: January 10, 2005

*served upon:*
David Anderson, Esq. *(By First Class Mail)*
Latti & Associates LLP
30-31 Union Wharf
Boston, Massachusetts 02109

**HYANNIS HARBOR TOURS, INC.**
As to objections,

   /s/ Michael Rauworth
Michael J. Rauworth, BBO# 547711
**CETRULO & CAPONE LLP**
World Trade Center East
Two Seaport Lane — 10th Floor
Boston, Massachusetts 02210
Tel: (617) 217-5500; fax: 617-217-5200

02006-0038
356439v1