UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THOMAS W. TREFNY,
    Plaintiff
v.
HYANNIS HARBOR TOURS, INC.,
    Defendant

CIVIL ACTION NO. 04-10798-NG

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

The defendant, Hyannis Harbor Tours, Inc., submits this memorandum in support of its motion for judgment as a matter of law as against the plaintiff Thomas W. Trefny, pursuant to Fed. R. Civ. P. 56.  This memorandum provides the points and authorities that complement the Statement of Material Facts — contained in the defendant's motion itself — and this memorandum incorporates that Statement.  (Key factual points in this memorandum refer to the Statement using the abbreviation "SMF," followed by paragraph number in the Statement.)  Applying the law set forth in this memo to those facts leads to the conclusion that Trefny's case must fail.

## INTRODUCTION

The vessel involved here, the *Grey Lady II,* was a catamaran fast-ferry, a vessel with twin aluminum hulls.  She was nearly new, having been recently built for Hyannis at the Gladding-Hearn Shipyard in Somerset, Massachusetts.  She was a vessel of less than 100 gross tons, in regular service between Hyannis and Nantucket.  Hyannis is a family business operated since the 1960s, and running a fleet of vessels from its base in Hyannis Harbor;  some of its operations are carried on under the trade name "Hy-Line Cruises."

Trefny served as chief mate of the *Grey Lady II,* a position second-in-command to the master (a.k.a. the captain) of the vessel.  He had authority over everyone who worked aboard, apart from the master.  He had just finished several years working for Maersk Lines, Limited, as chief mate of large military sealift cargo ships --- vastly larger vessels of some 60,000 gross tons, over 900 feet long

--- where he had been in charge of at least ten other members of the deck department, and tens of thousands of tons of cargo.

The incident in question happened on July 26, 2002, when the *Grey Lady II* was docked in Nantucket, late in the evening immediately before the last trip of the day back to Hyannis. Trefny was going up the gangway from the dock to the deck of the *Grey Lady II* when, he alleges, his foot slipped on something and his right knee was injured. Trefny brought suit, claiming recovery under the doctrine of unseaworthiness, and pursuant to the Jones Act. He also claimed for benefits under the doctrine of maintenance and cure.

## ARGUMENT

### I. TREFNY CANNOT ESTABLISH THE PIVOTAL FACT ON WHICH HIS CLAIM DEPENDS

Trefny has claimed that he was injured when he slipped on the gangway (sometimes described as a "ramp") of the *Grey Lady II*. But he cannot establish that the defendant had anything to do with his alleged loss of footing.

There was nothing wrong with the ramp, as a witness on the scene determined. SMF ¶4. In his deposition, Trefny has testified under oath that he never saw any foreign object on the gangway, or any object whatever, before or after his perception of pain, even though he testifies that he crossed the gangway (or ramp) at least twice afterwards. SMF ¶¶ 2 & 3. Thus, he is not a competent witness to contradict the affirmative evidence that there was nothing wrong with the ramp or gangway. Because of this, the evidence Hyannis has put forward is undisputed. This means Trefny cannot establish an essential element of his case. This shortcoming is fatal to his Jones Act and unseaworthiness claims, Counts I and II of his complaint.

### II. HYANNIS HAD NO OBLIGATION TO FURNISH AN "ACCIDENT-FREE SHIP"

One of Trefny's claims relies upon the doctrine of unseaworthiness. This is a doctrine of liability without fault imposed upon a shipowner, in favor of a seaman. It amounts to a duty on the

2

part of the shipowner to provide a ship "reasonably fit for its intended service."  The *duty* itself is absolute, but it is nevertheless *only* a duty to provide a ship that is *reasonably* fit --- there is no duty whatsoever to provide a ship that is perfect.  Despite the unconditional quality of the *obligation*, the standard by which the ship is measured is nevertheless only *reasonable fitness*, rather than perfection.

In particular, the shipowner had no obligation to furnish an "accident-free ship."  This has been the law of admiralty in this country for generations.

All of these propositions are well-capsulized by the leading case on the unseaworthiness remedy --- coincidentally, a Massachusetts case --- *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960), in its closing paragraph:

> What has been said is **not to suggest** that the owner is obligated to furnish **an accident-free ship**.  The duty is absolute, but it is a duty **only** to furnish a vessel and appurtenances **reasonably fit for their intended use**.  The standard is not **perfection**, but **reasonable** fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service.

*Mitchell* at 550 (emphasis added).  *Accord, Clausen v. Smith*, 823 F.2d 660, 665 (1st Cir. 1987).

Obviously, if there were a duty to furnish an accident-free ship, the shipowner would be made into an insurer of the seaman.  This would be at odds with the standard jury instruction that the mere occurrence of an accident is not evidence of culpability of the defendant.  *See, e.g., Logan v. Empresa Lineas Maritimas Argentinas*, 353 F.2d 373, 377 (1st Cir. 1965)("The mere happening of an accident does not in itself establish unseaworthiness.")

In keeping with the rule expressed in *Mitchell*, courts in the intervening years have found that a seaman can incur serious injury --- or even death --- without making the shipowner liable in unseaworthiness.  To take just one example, in *Ferrara v. A.V. Fishing, Inc.*, 99 F.3d 449 (1st Cir. 1996), the plaintiff was seriously injured when his vessel struck a submerged object.  The Court of Appeals affirmed a summary judgment ruling in favor of the defendant on the unseaworthiness count, because there was no evidence that the vessel was not "reasonably fit."  In other words, being

sound enough for her intended service was enough. She was not required to be, in effect, "bulletproof" — that is, able to withstand running onto a submerged object. The shipowner was exonerated because the plaintiff could not establish that there was any defect with the vessel that caused his harm, *i.e.*, that she was *not* "reasonably fit."

Likewise, Trefny cannot establish any defect in the *Grey Lady II*. This means he cannot establish that she was *not* reasonably fit for her intended use. In turn, this means that he cannot establish unseaworthiness, and his claim must fail. At most, Trefny can only establish that Hyannis failed to furnish an "accident-free ship." As *Mitchell* shows, there can be no liability on that basis, and thus judgment must enter for the defendant.

### III. UNDER HIS JONES ACT CLAIM, TREFNY CANNOT ESTABLISH ANY NEGLIGENCE AS TO THE CONDITION OF THE GANGWAY

Just as he cannot establish that there was any defect associated with the gangway, Trefny cannot establish that Hyannis was in any way culpable with regard to it. Trefny admits that he never saw anything whatsoever on the gangway. Therefore he cannot establish what (if anything) was *on* the gangway, much less how it had gotten there, or still less how long it had been there.

To prevail on a negligence claim under the Jones Act, 46 U.S.C. App. §688, Trefny has an obligation to prove by a preponderance "(1) that a dangerous condition actually existed aboard the ship; (2) that the defendant shipowner had notice of the dangerous condition and reasonably anticipated that plaintiff might be injured by it; and (3) that if the shipowner was negligent, such negligence proximately caused the plaintiff's injuries." *Webster v. United States*, 1995 U.S. Dist. LEXIS 8499 (S.D.N.Y. 1995)(citing *Diebold v. Moore-McCormack Bulk Transport Lines, Inc.*, 805 F2d 55, 58 (2d Cir. 1986)). As the master's testimony reflects, no dangerous condition existed on the *Grey Lady II* —nothing was wrong with the gangway. Plaintiff's own testimony shows that he cannot contradict this evidence. SMF ¶¶ 2 & 3. Thus he cannot carry his burden of showing an essential element to recovery under the Jones Act — that his physical problem was caused by something attributable to

the defendant; far less can he show a lack of due care, since it is purely speculation to suggest that the defendant had a role in Trefny's mishap at all. And even if the testimony of the master were hypothetically not available, an *absence* of evidence is simply insufficient, of course, to make out a claim under the Jones Act. *Poulis-Minott v. Smith*, 388 F3d 354, 366-67 (1st Cir. 2004).

### IV. TREFNY'S CLAIMS OF VESSEL SHORTCOMINGS FAIL FOR LACK OF A CAUSAL CONNECTION

Trefny also has asserted that the *Grey Lady II* had inadequate lighting and too tight a schedule. (Plaintiff's Answers to Hyannis Interrogatory, Answer No. 3, Exhibit 4 to the Motion). But these alleged conditions made a difference *only* in connection with the alleged foreign object on the gangway. SMF ¶6. Thus, these claims are meaningless, because Trefny cannot show what (if anything) was on the gangway. SMF ¶¶ 2 & 3. Without proof of a mechanism of Trefny's losing his footing, issues of lighting or schedule have no legal effect and cannot defeat summary judgment. Thus, even if one hypothetically *assumes* negligence on the part of the defendant as to lighting or the schedule, this does the plaintiff no good, because the practical effect — a shortcoming with the gangway surface, leading to a loss of footing — that would link them to the injury simply cannot be established. Trefny simply cannot establish cause-in-fact as to any complaint about lighting or schedule.

### V. TREFNY HAS BEEN PAID IN FULL ON HIS MAINTENANCE AND CURE CLAIM, AND FOR THIS REASON IT MUST BE DISMISSED

The ancient remedy of maintenance and cure operates in favor of a seaman, to fund his medical expenses and lodging to the point of maximum medical recovery. It has often been viewed as a precursor of today's statutory workers' compensation schemes.

Hyannis has never questioned that Trefny was entitled to maintenance and cure. Indeed, Hyannis has paid it in full and Trefny has acknowledged that he has not had to pay a single medical bill. SMF ¶7. He has never claimed that any medical expenses have gone unpaid. In addition, in

January 2003, Trefny presented a doctor's letter to the Navy so that he could resume participation with his naval reserve unit (indeed, he claimed that he wished to be deployed to the Persian Gulf with his unit).  He also took a required physical examination and renewed his Coast Guard license, giving him full legal authority to return to sea.  But Hyannis paid his maintenance to that time, and it has thus discharged its obligation to pay maintenance to the point of maximum medical recovery. *Whitman v. Miles*, 387 F.3d 68, 72 (1st Cir. 2004).  SMF ¶8.

This means Trefny has been paid in full as to his maintenance and cure claims.  This establishes the defense of payment, as pleaded in Hyannis' answer, and for this reason judgment should enter in favor of Hyannis on Trefny's claim for maintenance and cure, Count III of his complaint.

## VI. THE SUPREME COURT'S SUMMARY JUDGMENT JURISPRUDENCE REQUIRES A RULING IN FAVOR OF THE DEFENDANT HERE

When the facts of record show that a party cannot establish an element that is pivotal to an issue on which that party bears the burden of proof, summary judgment is appropriate.  *Celotex v. Catrett*, 477 U.S. 317 (1986); *Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40 (1st Cir. 2005).  Except for the question of maintenance and cure, Trefny's case depends on his ability to establish that there was something actually wrong with the gangway.  His own testimony shows that he cannot carry that burden.  This means that Counts I (Jones Act) and II (Unseaworthiness) must be rejected on the merits.

In addition, Hyannis has shown that it had discharged its obligation of maintenance and cure (Count III), and established the defense of payment.

As a result, summary judgment should enter in favor of Hyannis on the whole of Trenfy's complaint.

## CONCLUSION

The most that Trefny can prove is that Hyannis failed to furnish him an "accident-free ship." This is absolutely insufficient under the jurisprudence of the Jones Act or the doctrine of unseaworthiness, and for this reason Counts I and II must fail on the merits. Trefny was entitled to maintenance and cure, but it is undisputed that Hyannis has paid him, and this is a bar to further recovery, and so Hyannis is entitled to judgment on Count III as well.

**WHEREFORE, INASMUCH AS** the application of the law set forth herein to the undisputed facts set forth in the Statement of Material Facts leads to the conclusion that Hyannis is entitled to judgment as a matter of law, Hyannis respectfully urges that judgment enter in its favor, and that the Court afford to Hyannis any additional relief that the Court deems appropriate.

**CERTIFICATE OF SERVICE:** Undersigned counsel hereby certifies that s/he has this day provided a true copy of this document to all counsel of record and all parties appearing pro se (if any) by the method indicated alongside their respective names as shown below.

Dated: April 15, 2005

*served upon:*
David Anderson, Esq.   *(By Hand)*
Latti & Associates LLP
30-31 Union Wharf
Boston, Massachusetts 02109

**HYANNIS HARBOR TOURS, INC.**
By its attorneys,

  __/s/ Michael Rauworth_____
Michael J. Rauworth,  BBO# 547711
**CETRULO & CAPONE LLP**
World Trade Center East
Two Seaport Lane — 10th Floor
Boston, Massachusetts 02210
Tel: (617) 217-5500; fax: 617-217-5200