UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THOMAS W TREFNY,<br>    Plaintiff<br><br>V.<br><br>HYANNIS HARBOR TOURS, INC.,<br>    Defendant | Civil Action<br><br>No. 04-10798-NG |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiff in the above captioned matter and opposes Defendant's Motion for Summary Judgment. As grounds thereof the Plaintiff states that there is sufficient evidence of record from which a reasonable juror could find that the Defendant was negligent and that the Defendant's vessel was unseaworthy and that this negligence and unseaworthiness were causes of Plaintiff's injury. Further, there is sufficient evidence of record from which a reasonable juror could find that the Defendant did not provide the Plaintiff with maintenance payments sufficient to cover his living expenses during the time period he was not fit for duty as required by the General Maritime Law.

As grounds thereof the Plaintiff relies upon the below Statement of Material Facts as to Which there is a Genuine Dispute, the below Memorandum, the attached Declaration of Thomas Trefny, (Ex. "A") and Plaintiff's Answers to Defendant's Interrogatories, (Ex. "B") as well as the transcript of the Deposition of Thomas Trefny, a copy of which was filed with Defendant's Motion.

As a preliminary matter it should be noted that Defendant's motion is predicated upon the

assertion by the Defendant that Plaintiff's liability claims arise solely from Plaintiff stepping on something on the gangway and injuring himself. As the Defendant is well aware, this is simply not the case. Plaintiffs primary theories of liability as previously set forth in his answers to interrogatories and deposition are based upon A) inadequate lighting of the gangway and B) the unsafe pace of operations under which the Plaintiff was forced to work.[1]. Simply stated the Plaintiff alleges that he was injured because the conditions of his employment forced him to run at night on a dark gangway. The presence of "something" on the gangway is a theory of liability under the doctrine of transitory unseaworthiness. <u>See</u>, <u>Mitchell vs. Trawler Racer</u>, 362 U.S. 539 (1960). However because no one knows what the "something" was, how it got on the gangway or how long it was there, the "something" on the gangway is not, and never has been, a theory of liability under Plaintiff's claim for Jones Act Negligence. Simply stated, in its motion Defendant sets up a straw man by characterizing Plaintiff's case as a "slip and fall" and does not even address Plaintiff's primary theories of liability.

<u>Plaintiff's Statement of Material Facts as to Which there is a Genuine Dispute</u>

1. On the evening of July 26, 2002, the Plaintiff Thomas Trefny was injured while employed by the Defendant, Hyannis Harbor Tours as a member of the crew of the Grey Lady II. <u>Dec. of Trefny</u>, Para. 4, (Ex. "A").

---

[1] "… there was inadequate lighting on the gangway upon which he was injured and further that the Defendant failed to schedule adequate amount of time in port between trips…"  <u>Plaintiff's Answers to Interrogatories</u> #3, P. 2 (Ex. "B")
"Q.    How is it that the ship could have prevented this accident from Happening?
 A.    Better illumination. Reduce the need for rushing and hurrying in the turnarounds".
         <u>Depo of Trefny</u>, pp. 88-89

2.  At the time of Trefny's injury he was running up the gangway to the Grey Lady when his right foot stepped on something on the gangway that caused him to loose his footing and injure his knee. Upon the vessel returning to Hyannis, Trefny was taken to the emergency room at Cape Cod Hospital and was subsequently diagnosed with a torn ACL of his right knee. Dec. of Trefny, Para. 4, (Ex. "A"), Depo. of Trefny, pp. 79-80, 83, Plaintiff's Ans. to Ints., #3, P. 2 (Ex. "B")

3.  At the time of Trefny's injury, the walking surface of the gangway in the location he was injured was shadowed and dark. Dec. of Trefny, Para. 4, (Ex. "A"). Depo of Trefny, pp. 89, 97-98, Plaintiff's Ans. to Ints., #3, P. 2 (Ex. "B").

4.  Trefny did not see what the thing he stepped on was, because he was running and the gangway was dark. Dec. of Trefny, Para. 4, (Ex. "A"); Depo of Trefny, P. 79.

5.  The "thing" on the gangway could have been something that fell from the baggage carts as they were being taken off the vessel. Depo. of Trefny, P. 94.

6.  The surface of the gangway received no direct illumination. The only illumination of the gangway came from the ambient light on the back deck of the vessel and ambient lighting from the pier. Dec. of Trefny, Para. 5 (Ex. "A"); Depo. of Trefny, pp. 89, 97-98.

7.  This lack of illumination on the gangway of the Grey Lady prevented Trefny from seeing whatever was on the gangway and caused him to loose his footing. Dec. of Trefny, Para. 5 (Ex. "A"); Depo. of Trefny, pp. 88-89.

8.  There was a lack of adequate lighting on the gangway of the Grey Lady at night (including the night of Trefny's injury) and that this lack of adequate lighting created an unreasonable risk of injury to passengers and crew of the Grey Lady. Dec. of Trefny, Para. 6

(Ex. "A"); Depo of Trefny, pp. 88-89, 97-98; Plaintiff's Ans. to Ints., #3, P. 2 (Ex. "B") .

9.      Prior to his injury Trefny had discussed the lack of adequate lighting with the Master of the Grey Lady and had expressed the above opinion.  The Defendant, Hyannis Harbor Tours was on notice of the lack of adequate lighting of the gangway.  Dec. of Trefny, Para. 6 (Ex. "A"); Depo of Trefny, pp. 99.

10.     Trefny was running at the time of his injury because the vessel was behind schedule and he had been instructed by the master of the vessel to get the passengers and baggage off and on the vessel as quickly as possible.  This was standard practice on the Grey Lady as the crew was repeatedly told to "hustle".  Dec. of Trefny, Para. 7 (Ex. "A"); Depo. of Trefny, pp. 79-80, 106, 108-109.

11.     If Trefny had not been running when he lost his footing on the gangway, he would not have twisted his knee and injured himself.  The fact that Trefny was running up the gangway was a cause of his injury. Dec. of Trefny, Para. 7 (Ex. "A"); Depo of Trefny, pp. 79-80, 89, 94-95, 108-109.

12.     Given the amount of time scheduled between trips, the number of crew members working on the vessel and the number of passengers and baggage to get on and off each trip the schedule set by the company could only be kept if the mate (myself) and the two deckhands worked as quickly as the could while the vessel was in port. Dec. of Trefny, Para. 7 (Ex. "A"); Depo of Trefny, pp. 94-95.

13.     The Defendant, Hyannis Harbor Tours did not schedule an adequate amount of time for the Grey Lady to be in port between trips.  This inadequate scheduling forced the crew to work at a rushed and unsafe pace.  Dec. of Trefny, Para. 8 (Ex. "A"); Depo of Trefny, pp. 94-95,

Plaintiff's Ans. to Ints., #3, P. 2 (Ex. "B") .

14.   Prior to Trefny's injury he had discussed with the Captain the tight schedule and resulting rushed pace of operations and had expressed his opinion to the Captain that the schedule did not allow enough time in port.  Dec. of Trefny, Para. 8, (Ex. "A");  Depo. of Trefny, pp. 106.

15.   The Defendant, Hyannis Harbor tours was on notice that it had scheduled an inadequate amount of time in port between trips and that this forced the crewmembers to work at a rushed and unsafe pace.  Dec. of Trefny, Para. 8 (Ex. "A");  Depo of Trefny, pp. 106.

16.   From the fall of 2002 through the time Trefny received a medical "fit for duty" in January of 2003, Trefny received maintenance at the rate of $105/wk from the Defendant's insurance adjuster.   During this time period Trefny was paying $700/mo in rent and spending over $300/mo. in food and other necessities not including utilities.  Dec. of Trefny, Para. 9, (Ex. "A").

17.   During the fall of 2002 Trefny told the Defendant's vice president, Murray Scudder, that the amount he was being paid by the insurance company was not covering his living expenses. Trefny was advised that the amount of weekly maintenance was decided by the insurance company.  Following this conversation there was no change in Trefny's maintenance rate.  Dec. of Trefny, Para. 9 (Ex. "A"); Defendant's Answers to Ints. P. 9 (attached to Def. Motion).

Plaintiff's Response to Defendant's

"Statement of Material Facts As to Which there is no Genuine Dispute"

1.   Denied.  Contrary to the assertions of the Defendant, Plaintiff's liability claims are, and always have been based upon A) the inadequate lighting of the gangway B) the rushed and

unsafe pace of operations imposed by the schedule Defendant's management and C) the presence of "something" on the gangway which the Plaintiff did not see because the gangway was dark and he was running.  <u>Depo of Trefny</u> pp. 79-80, 88-89, 95-99, 106, 108.  <u>Plaintiff's Ans. to Def. Ints.</u>, #3, P. 2 (Ex. "B").

2.    Admitted.

3.    Admitted in part, Denied in part.  There was something on the gangway that Trefny stepped on and caused him to loose his footing and injure his knee.  However Trefny does not know precisely what that something was.  <u>Dec. of Trefny</u>, Para. 4-5 (Ex. "A");  <u>Depo. of Trefny</u> pp. 79-80, 94.

4.    Denied.  There gangway lacked adequate illumination which posed an unreasonable risk of injury to passengers and crew and there was something on the gangway which caused Trefny to loose his footing.  <u>Dec. of Trefny</u>, Para. 4, 5, 6 (Ex. "A"); <u>Depo of Trefny</u> pp.79-80.

5.    Denied.  The quote is the statement of Defense counsel to which Plaintiff responded by indicating that he did not recall the exact verbiage.  <u>Depo of Trefny</u> P. 97. lines 5-13.  Further the word "just" in the passage refers to time rather than cause.  <u>Id.</u>  Trefny alerted the Captain that there was something not right with the gangway.  <u>Depo of Trefny</u> P. 90, lines 10-13.

6.    Denied.  The lack of lighting on the gangway and the unsafe pace of the work caused by the vessels schedule were direct and substantial causes of the Plaintiff's injury.  <u>Dec. of Trefny</u>, Para. 5, 6, 7, 8 (Ex. "A").

7.    Admitted.

8.    Admitted.

ARGUMENT

A.   STANDARD FOR SUMMARY JUDGMENT

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" is one in which "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). In order to defeat a motion for summary judgment a party need only submit evidence sufficient to support a prima facie case of the claims asserted. Gulf Puerto Rico Lines v. Maicera Criolla, Inc., 309 F.Supp. 539, 541 (D. P.R. 1969). When deciding a motion for summary judgment, the Court must view the record in the case and the summary judgment submissions in the light most favorable to the nonmovant. Anderson vs. Liberty Lobby, Inc. 477 U.S. 242, 255, 106 S.Ct. 2505 (1986) ("evidence of the nonmovant is to be believed and all reasonable inferences are to be drawn in his favor").

B.   THE JONES ACT

Under the Jones Act, 46 U.S.C. §688, a maritime employer has a duty to use reasonable

care under the circumstance to prevent injury to seamen/employees. <u>Gautreaux v. Scurlock Marine, Inc.</u>, 107 F.3d 331, 339 (5th Cir. 1997). This duty includes the duty to use reasonable care to provide the seamen with a reasonably safe place to work. <u>Mahnich v. Southern S.S. Co.</u>, 321 U.S. 96, 102, 64 S.Ct. 455, 459 (1944). The duty to provide a safe place to extends to providing a safe means of egress from or ingress to a vessel. <u>Massey v. Williams-McWilliams, Inc., 414 F.2d 675 (5th Cir. 1969)</u>; <u>Saloamon v. Motor Vessel Poling Bros. No. 11, Inc.</u>, 751 F.Supp 343 (E.D.N.Y. 1990)(Negligence found due to failure to properly light gangway to ship)

Negligence may consist of knowingly failing to provide a seaworthy vessel. <u>Cortes v. Baltimore Insular Line</u>, 287 U.S. 367, 53 S.Ct. 173 (1932). Under the Jones Act, an act of negligence is considered a legal cause of injury or death if it played any part, no matter how small, in bringing about or actually causing injury or death. <u>Gautreaux v. Scurlock Marine, Inc.</u>, 107 F.3d 331, 339 (5th Cir. 1997). "Courts should exercise special care in considering summary judgment in Jones Act cases which require a very low evidentiary threshold for submission to a jury." <u>Prosser v. Crystal F/V Viking</u>, 940 F.2d 1535 (9th Cir. 1991).

Here the Plaintiff has submitted direct evidence from which a juror could find that as a result of orders by his superiors the Plaintiff was running up an unlit gangway at night when he stepped on something that caused him to injure his knee. <u>Plaintiff's Statement of Material Facts</u>, Para. 2-6, 10-11, 13-15. There is undisputed evidence, including an expert opinions, that the lighting on the gangway inadequate and unsafe. <u>Plaintiff's Statement of Material Facts</u>, Para 8. There is undisputed evidence that the Defendant had actual knowledge of this unsafe condition. <u>Plaintiff's Statement of Material Facts,</u> Para. 9. There is evidence that the lack of adequate lighting was a cause of Plaintiff's knee injury. <u>Plaintiff's Statement of Material Facts</u>, Para 7.

With respect to Plaintiff's theory of liability based upon inadequate lighting, the Plaintiff has established A) and unsafe working condition B) of which the Defendant had notice that C) caused injury to the Plaintiff. Accordingly, Plaintiff has made out a prima facie case of negligence under the Jones Act.

With respect to Plaintiff's negligence claim arising from the Defendant creating unsafe working conditions by forcing the crewmembers to rush the job, it is undisputed that at the time of his injury the Plaintiff was running up the gangway. Plaintiff's Statement of Material Facts, Para 2. It is undisputed that at the time of his injury the Grey Lady was behind schedule. Plaintiff's Statement of Material Facts, Para 10. There is undisputed evidence, including expert opinions, that the Defendant's management did not schedule an enough time in port between trips for the crew to safely off-load and on-load passengers and baggage and that this failure caused the crew to work at an unsafe pace. Plaintiff's Statement of Material Facts, Para 13. There is undisputed evidence that the Defendant was aware that the schedule and the Captain was forcing the crew to work at an unsafe pace. Plaintiff's Statement of Material Facts, Para 14. There is evidence that the unsafe pace of work (running) was a cause of the Plaintiff's injury. Plaintiff's Statement of Material Facts, Para 11. The Plaintiff has established A) and unsafe working condition B) of which the Defendant had notice that C) caused injury to the Plaintiff. Accordingly, Plaintiff has made out a prima facie case of negligence under the Jones Act on his second theory of liability.

C.  UNSEAWORTHYNESS

Under the warranty of seaworthiness, a vessel owner has an absolute, non-delegable duty to provide a seaworthy vessel. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549-550, 80 S.Ct.

926, 932-933 (1960); McAleer v. Smith, 57 F.3d 109, 114 (1st Cir. 1995). A seaworthy vessel is a vessel whose hull, equipment, appurtenances and crew are reasonably fit for the purpose for which they are intended and used. Id.

Here, there is undisputed evidence that the gangway on the Grey Lady was dark and that the Plaintiff could not see where he was placing his feet. Plaintiff's Statement of Material Facts, Para 2-4, 6-8. There is undisputed evidence, including expert opinions, that the lighting on the gangway of the Grey Lady was inadequate and unsafe. Plaintiff's Statement of Material Facts, Para 8. There is evidence that the lack of lighting on the gangway was a cause of the Plaintiff's injury. Plaintiff's Statement of Material Facts, Para 3-4. The Plaintiff has established A) an unseaworthy condition on an appurtenance to the vessel which B) caused injury. Accordingly, with respect to the claim of lack of adequate lighting the Plaintiff has made out a prima facie case.

Although it is possible or even likely that the "thing" that caused the Plaintiff to loose his footing fell off of a baggage cart (See, Depo. of Trefny, P. 94) the Plaintiff cannot establish with any degree of certainty what that thing was. Plaintiff's Statement of Material Facts, Para 4. However, there is absolutely no requirement that the Plaintiff prove what it was that he lost his footing on in order to establish an unseaworthy condition. There is evidence that there was a tripping hazard on the gangway that did not belong there and could not be seen due to the lack of illumination. Plaintiff's Statement of Material Facts, Para 4. Depo. of Trefny, P. 93-94. This alone is sufficient to establish an unsafe and unseaworthy condition. Simply stated, it does not what the tripping hazard is on a dark gangway, as long as a creates an unreasonable risk of harm to crewmembers. There is direct evidence that whatever was on the gangway caused the

Plaintiff to loose his footing and injure his knee.  <u>Plaintiff's Statement of Material Facts</u>, Para 2. In its <u>Motion</u> the Defendant asserts that Plaintiff must prove not only that there was a tripping hazard on the gangway but must also prove precisely what that hazard was.  There is no legal support for this assertion.  If crew members are forced to run on a dork gangway at night, anything on that gangway will create a dangerous and unseaworthy condition.  Accordingly, the Plaintiff has also made out a prima facie case of unseaworthiness based upon there being "something" on the gangway that was a cause of his injury.

D.     <u>MAINTENANCE & CURE</u>

"General maritime law requires ship-owners to ensure the maintenance and cure of seamen who fall ill or become injured while in the service of the ship."  <u>Sullivan vs. Tropical Tuna, Inc.</u>, 963 F.Supp. 42, 44 (D.Ma, 1997) *citing* <u>LeBlance v. B.G.T. Corp.</u>, 992 F.2d 394, 396 (1st Cir. 1993).  "The term maintenance and cure refers to the provision of, or payment for food and lodging (maintenance) as well as any necessary health care expenses (cure) incurred during the period of recovery.  <u>Id.</u>  A ship owner's duty to provide maintenance and cure extends from the time of the injury until the seaman reaches maximum medical cure.  <u>Id.</u>  With respect to lodging expenses an injured seaman is entitled to be reimbursed for reasonable rent or mortgage payments he has paid from the date of his injury until he reaches an end medical result.  <u>Hall vs. Noble Drilling, Inc.</u>, 242 F.3d 582, 589 (5th Cir. 2001).

Here it is undisputed that the Plaintiff incurred rent of $700/month and food and other necessary costs of more than $300/month.  <u>Dec. of Trefny</u>, Para 9.  (Ex. "B").  For an individual living on Cape Cod these living expenses are reasonable.  The Defendant only provided maintenance in the amount of $105/wk or $15/day or $450/month.  <u>Id.</u>  Accordingly, there is

sufficient (undisputed) evidence that the Defendant owes the Plaintiff at least $550 a month in unpaid maintenance benefits. Accordingly, as to Count III (Maintenance & Cure) Defendant's motion should be denied. Plaintiff does not dispute that the Defendant has fulfilled its obligations with respect to the payment of medical bills (cure).

## CONCLUSION

Plaintiff has submitted sufficient evidence to support a finding that the Defendant was negligent in two respects. First the Defendant failed to adequate lighting to the gangway upon which the Plaintiff was injured and second that the Defendant failed to schedule sufficient time in port between trips resulting in the Defendant ordering the crewmembers to work an unsafe pace (running). The Plaintiff has submitted sufficient evidence to support a finding that the Defendant was on notice of the above conditions and that the above conditions were causes of the Plaintiff's knee injury. Accordingly with respect to Court I (Jones Act Negligence) <u>Defendant's Motion for summary Judgment</u> should be denied.

Plaintiff has submitted sufficient evidence to support a finding that there was inadequate lighting of the gangway of the Grey Lady and that at the time of the incident there was something on the gangway that created a tripping hazard to crewmembers using the gangway. Plaintiff has further submitted sufficient evidence to support a finding that the thing on the gangway and the lack of adequate lighting were causes of his injury. Accordingly, with respect to Court II (Unseaworthiness) <u>Defendant's Motion for Summary Judgment</u> should be denied.

Plaintiff has submitted sufficient evidence to support a finding that the Defendant has failed to provide the Plaintiff with maintenance payments sufficient to reimburse him for his

reasonable rent and food expenses incurred during the course of his disability.  Accordingly, with respect to Count III (Maintenance and Cure) Defendant's Motion for Summary Judgment should be denied.

WHEREFORE, the Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be denied.

                                      Respectfully submitted for the
                                      the Plaintiff, THOMAS W. TREFNY,
                                      by his attorney,

                                      /s/ David F. Anderson
                                      David F. Anderson
                                      Latti & Anderson LLP
                                      30-31 Union Wharf
                                      Boston, MA 02109
                                      (617) 523-1000

Dated:  April 29, 2005

### Certificate of Service

I, David F. Anderson, counsel for the Plaintiff hereby certify that the above pleading was served upon Counsel for the Defendant on the below dates by the below method of service.

ECF            (X)

Fax:            ( )

Overnight Mail ( )

1st Class Mail  ( )

Dated: April 29, 2005                                /s/ David F. Anderson
                                                     David F. Anderson