

PLAINTIFF'S EXHIBIT A

UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS W TREFNY,<br>Plaintiff<br><br>V.<br><br>HYANNIS HARBOR TOURS, INC.,<br>Defendant | Civil Action<br><br>No. 04-10798-NG |

### DECLARATION OF THOMAS TREFNY

Pursuant to 28 U.S.C. Sec. 1746, I, Thomas Trefny do hereby declare and state as follows:

1. I am the Plaintiff in the above captioned case.

2. I am a graduate of the Massachusetts Maritime Academy. From my graduation from MMA in the late 80's until the 2002 I sailed as an officer with various shipping companies within the U.S. merchant fleet. I currently hold a United States Coast Guard Unlimited Masters License which I acquired based upon my education, my sea time in various classes of vessels and by my passing several tests. Pursuant to my Unlimited Masters license I am authorized by the USCG to serve as Master (Captain) of any civilian vessel in any ocean in the world.

3. In addition, I am also a Lieutenant Commander within the U.S. Naval Reserves. Within the naval reserves my specialty is in Port Operations. I have been trained and have expertise regarding scheduling and movement of vessels into and out of ports. From January of 2003

through November I was on active duty serving as Port Operations Officer for the Port of Kuwait. In connection with this duty I was tasked with the scheduling and movement of vessels into and out of the Port of Kuwait in support of military operation in Iraq.

4. On the evening of July 26, 2002, I was injured while employed by Hyannis Harbor Tours as a member of the crew of the Grey Lady II. At the time of my injury I was running up the gangway to the Grey Lady when my right foot stepped on something on the gangway that caused me to loose my footing and twist my knee. I did not see what the thing was because I was running and the gangway was dark.

5. At the time of my injury, the walking surface of the gangway in the location I was injured was shadowed and dark. The surface of the gangway received no direct illumination. The only illumination of the gangway came from the ambient light on the back deck of the vessel and the ambient lighting from the pier. This lack of illumination prevented me from seeing whatever was on the gangway that caused me to loose my footing.

6. Based upon training and experience both as an Unlimited Master and Naval Officer it is my opinion that there was a lack of adequate lighting on the gangway of the Grey Lady at night (including the night of my injury) and that this lack of adequate lighting created an unreasonable risk of injury to passengers and crew of the Grey Lady. Prior to my injury I had discussed the lack of adequate lighting with the Master of the Grey Lady and had expressed my above opinion.

7. At the time of my injury I was running up the gangway of the Grey Lady. I was running because the vessel was behind schedule and I was instructed by the master of the vessel to get the passengers and baggage off and on the vessel as quickly as possible. This was standard practice on the Grey Lady as the crew was repeatedly told to "hustle". If I had not been running when I lost my footing on the gangway I would not have twisted my knee and injured myself. Given the amount of time scheduled between trips, the number of crew members working on the vessel and the number of passengers and baggage to get on and off each trip the schedule set by the company could only be kept if the mate (myself) and the two deckhands worked as quickly as the could while the vessel was in port.

8. Based upon my training and experience both as a licensed master and a naval officer specializing in port operation, it is my opinion that the Hyannis Harbor tours did not schedule an adequate amount of time for the Grey Lady to be in port between trips. This inadequate scheduling forced the crew to work at a rushed and unsafe pace. Prior to my injury I had discussed with the Captain the tight schedule and resulting rushed pace of operations and had expressed my opinion to him that the schedule did not allow enough time in port.

9. During the fall of 2002 through my receiving a medical "fit for duty" in January of '03 I received maintenance at the rate of $105/wk from the Defendant's insurance adjuster. During this time period I was paying $700/mo in rent and spending over $300/mo. in food and other necessities not including utilities. During the fall of '02 I told Murray Scudder that the $15.00 per day I was being paid by the insurance company was not covering the above living expenses. I

was advised that the amount of weekly maintenance was decided by the insurance company. Following this conversation there was no change in my maintenance rate.

10.     Prior to my injury on the Grey Lady II, my right knee had never "gone out". I never told Captain Bezedlo that my right knee had "gone out" in the past.

11.     Due to the design and orientation of the gangway, liquids could not puddle. However, if liquids spilled onto the gangway then the gangway could become slippery.

Signed under the penalties of perjury this 28th day of April 2005.

_____
Thomas Trefny