UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS



PLAINTIFF'S
EXHIBIT
B

| | |
|---|---|
| THOMAS W TREFNY,<br>        Plaintiff<br><br>V.<br><br>HYANNIS HARBOR TOURS, INC.,<br>        Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action

No. 04-10798-NG

## PLAINTIFF'S ANSWERS TO DEFENDANT'S INTERROGATORIES.

Q. #1.  Identify each individual participating in the response to these interrogatories.  In so identifying, provide the name, residential address, present occupation, business telephone, social security number, and title of each such individual, and identify each specific interrogatory as to which the said individual has participated in responding, and identify all documents and things which were reviewed, consulted, relied upon or otherwise utilized in responding to these interrogatories.

A        #1.    The Plaintiff, Thomas William Trefny, 4446A Falmouth Rd, Cotuit, MA. 02635, 508-685-6321, 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, in conjunction with his attorney.

Q. #2.  If you withhold (or refuse to disclose, produce, or divulge) anything whatsoever (of any character or nature) called for in any way in this discovery package (or by any other discovery request of any form presented to you at any time by the Proponent), then as to each such item withheld, identify fully the item withheld, and state each and every basis upon which you claim entitlement to withhold the item (whether privilege or otherwise), and the specific fact or facts that you contend creates the predicate for your alleged entitlement to withhold it.

A. #2.  Plaintiff objects to interrogatory #2 on the basis that it is not calculated to lead to the discovery of relevant information relating to any claim or defense in this case.

Q. #3.  Identify:

        a.        your parents, each and every spouse or former or present spouse of yours, any siblings or children, and all persons with whom you shared a dwelling during the Defined Time Period, and state the address of each location you occupied for a period of a month or more (in the aggregate) during any part of the Defined Time Period, and the dates of your occupancy there.

b.    each and every person who took any part in or who experienced in any way any part of the Events, or who you have reason to believe possesses any information concerning any of the facts you have alleged in this action (including without limitation as to any medical condition or consequences), including the job title and description and the role or involvement of the person in question in the Events; and

c.    each and every person from whom you will elicit testimony for use in Court (whether by deposition or by live testimony in Court or otherwise), and as to each, state:

(1)    the involvement or roll of the witness in the Events;

(2)    the substance of the testimony (both as to facts and/or opinions) that you will seek elicit from the witness, whether at trial or otherwise; and

(3)    a summary of the grounds and basis for any opinion testimony to be elicited, and a synopsis of the training, experience and/or scholarship that will be any part of the basis for your attempt to have the witness in question testify to opinions.

A.#3    Plaintiff objects to Interrogatory #3(A) on the basis that it is overly broad in terms of time, is actually about two dozen questions all rolled into one, is overly burdensome and calls for information that is not calculated to lead to the discovery of information relevant to any claim or defense in this case. Notwithstanding this objections, with respect to Interrogatory (b) the individuals who worked on the vessel at the time of the incident include Capt. Bob Bezedlow, Deck Hand Josh Eaton, Deck Hand Mathew Harris. With respect to Interrogatory 3(c) plaintiff presently intends to call himself and Dr. McWilliam both of whom are likely to offer what could be considered expert testimony. Dr. McWillaim is expected to testify consistent with his medical records based upon his treatment of the Plaintiff and his experience as an othropedic surgeon. In a nutshell Dr. McWilliams is expected to testify that as a result of his injury on the Defendant's vessel he sustained a torn right ACL and meniscus which was operated on. Dr. McWilliams is expected to testify that the Plaintiff was disabled from employment as a seaman from the time of the injury through January of 2003. The Plaintiff is expected to testify that there was inadequate lighting on the gangway upon which he was injured and further that the Defendant failed to schedule adequate amount of time in port between trips to so as to enable the crew to both keep the vessel on schedule and safely load and unload passengers and luggage. The Plaintiff is expect to base his opinions upon his experience and expertise as a USCG licensed captain as well as his training and experience as a Lt. Commander within the US Navy with a specialty in Port Operations.

Q. #4.    Identify each and every occasion (if any) on which you have been arrested by civil authorities or been subject to any discipline or sanction as member of the military or in connection with any employment, and as to each such occasion state the plea or response

you made to the charges or allegations, the disposition of them, any penalty or adverse consequence imposed, any periods of incarceration, parole or probation associated with said arrest, the identity and address of the arresting authority and of any parole or probation officer, the identity and address of any court involved, and the docket or other identifying number of any associated proceedings.

A. #4. Plaintiff objects in interrogatory #4 on the basis that it is overly broad and request information which is neither admissible or likely to lead to the discovery of relevant evidence. Without waiving said objections the Plaintiff has never been charged with a crime.

Q. #5. Identify each and every communication of which you are aware (i) with respect to any aspect of the Events (whether in written form or otherwise) or (ii) with respect to any fact that you intend to establish your case against the Proponent, and made by (1) the Plaintiff; (2) any co-Plaintiff; (3) any witness to any aspect of the Events; (4) any health-care provider; or (5) the Proponent, any representative, agent, servant or employee of the Proponent, or any person whose words you expect somehow to bind the Proponent. In addition, with respect to each such communication:

   a.      identify what was communicated, or, to the extent you do not recall exactly what was communicated, the substance of what was communicated;

   b.      identify as fully as you can (including by name, if you have such information, or otherwise by description, clothing, actions at the time, or otherwise) of the maker or originator of each such communication; and,

   c.      state your geographic location, and your proximity to the person making the communication, at the time each communication was made.

A. #5. Plaintiff objects to interrogatory #5 on the basis that it does not make sense. However without waiving such objection, the Defendant's Captain and management repeatedly stressed (orally) the need to load and unload the passengers and luggage as fast as possible in order to meet the vessels scheduled.

Q. #6. This interrogatory concerns any Requests for Admissions served (at any time, whether within this document or through some other method) by any Proponent on any Recipient. As to each and every one of Proponent's requests for admissions to which your response is other than an unqualified admission, separately:

   a.      identify precisely what you do and not admit;

   b.      state the complete factual and/or legal state of affair that you contnd is at odds

with any portion of the request as to which you do not make an unqualified admission;

c.      identify all evidence on which you rely to prove such contrary factual state of affairs and/or all legal authorities on which you rely to establish any contrary legal position; and

d.      state the complete basis in fact and in law that you contend provides you with a basis to avoid the payment of the Proponent's costs (under Rule 37) of proving or establishing the factual or legal state of affairs set forth in the particular request for admission.

A. #6.  Plaintiff objects to interrogatory #6 on the basis that it does not seek the discovery of relevant evidence and therefore is beyond the scope of discovery set forth in Rule 26.

Q. #7.  With respect to the entire length of the Defined Time Period, describe fully and in complete detail all injuries, diseases, deficits or other effects of any kind that the Plaintiff experienced (for any reason or cause, whether or not allegedly as a result of the Incident), each medical diagnosis and prognosis regarding the same, and any treatment, therapy, test, examination, service, operation, procedure, medication, or consultation (collectively "Health-Care Services")

a.      identify each person or institution that rendered any such Health Care Services;

b.      itemize the date upon which each such Health-Care Service was rendered; and, solely as to each injury, disease, deficit, or effect that you contend resulted from the Incident, and any Health Care Services that you contend was necessary or that you sought or received because of the Incident, then further and additionally:

c.      state the nature and purpose of each element of such Health-Care Services;

d.      state the fee charged for each element of Health-Care Services; and

e.      state the amount, if any, actually paid for such Health-Care Services, the identity of the person who made payment for it, the invoice or item(s) against which each said payment was made, the date of the said payment, and the amount of any lien or claim of lien against the potential proceeds of this action of which you are aware and identifying any person (including without limitation any HMO or insurer) claiming such a lien.

A. #7.  Plaintiff sustained a right knee injury while employed aboard Grey Lady II. Initial diagnosis (Emergency Room at Cape Cod Hospital) was believed to be a torn ACL. A referral to an Orthopedic Surgeon was given for further evaluation. Plaintiff complained of severe pain with instability of the joint. Follow-up evaluation confirmed the initial

4

diagnosis and an MRI was scheduled to determine the extent of damage. MRI showed a torn ACL and torn Meniscus. Surgery to repair the Meniscus and total replacement of ligament was required.

a. Cape Cod Hospital Emergency Room
   Dr. James McWilliam. Manning and McWilliam Orthopedics and Sports Medicine.

b. July 26th 2002. Cape Cod Hospital Emergency Room. Plaintiff complained of severe swelling, pain and instability of right knee.
   July 30th Appointment with Dr. McWilliam for evaluation.
   Aug 13th Office visit with Dr. McWilliam. Continued pain and instability. MRI scan recommended.
   Aug 15[st](approx). MRI Scan done at Cape Cod Hospital.
   Aug 23rd Office visit with Dr. McWilliam to review MRI Scan. Surgery recommended.
   Oct 3rd. Surgical procedure completed.
   Oct 9th. First Rehab visit at Sandwich Physical Therapy. 2-3 visits per week.
   Oct 16th. Office visit with Dr. McWilliam for exam. Follow up exam scheduled 6 weeks later.
   Jan 3rd 2003. Office visit with Dr. McWilliam. Cleared for work. ACL Brace prescribed. Released from rehab.
   Mar.28[th]. Final Office visit and evaluation.

c. All office visits, surgery and physical therapy were done to evaluate, repair and rehabilitate the right knee as a result of the injury.

d. Fees not know as they were direct billed to Defendant/Defendant Insurance Company.

e. Not known by Plaintiff.

In addition the Plaintiff had ACL repair of his left knee in '99. He was treated and had surgery performed by Dr. Willsterman at the Falmouth hospital. In 2000 he went to Falmouth hospital ER for symptoms of Chest Pain.

Q. #8.  Unless you are waiving any claim in the nature of loss of income or impairment of earning capacity, then:

a.      as to the Defined Time Period, identify of each present or past your employers or sources of income (even if your income from the specific source was not affected by your injuries), the respective dates to which each period of employment or source of income pertains, and the compensation received from each such source of income and the basis on which it was calculated.

b.      identify and state the nature of any source of income (whether wages or otherwise, and whether past, present or future) that you contend has been or will be impaired and as to each employer or other such source of income:

(1)      state each reason you contend that our income from the source was, is or

will be diminished;

      (2)    as to any past source of income, state the specific time period(s) during which you contend the Proponent caused you any loss of income, your activities and earnings (if any, and from any source) during each such period, and your efforts to minimize the amount of any such loss during each such period and your calculation of the amount of the diminution;

      (3)    as to any future expected source of income, state (i.) the basis for your conclusion that the expected source or amount of income would actually have been available to you in the future in the absence of your injuries; (ii.) the basis for your conclusion that your injuries have diminished these prospects; and (iii) the basis for calculating the amount of any financial diminution you claim.

A. #8.  Plaintiff objects to Interrogatory #8 on the basis that it does not make sense and to the extent it mades sense it is about dozen questions all rolled into one. Without waiving said objection, the plaintiffs work history is set forth in response to Interrogatrory #15. In the two calendar years preceeding his injury the Plaintiff averaged $70,000 per year. Plaintiff earnings records for the past decade is contained in his Social Security report which has been produced. Plaintiff's claim for lost wages is set forth in response to Interrogatory #9 below.

Q. #9.  Provide a complete description of the monetary damages to which you claim to be entitled as a result of anything else for which you claim the Proponent to be responsible, identifying each category of damages and any basis used for calculating it; in addition, state all factual propositions that you will attempt to prove at trial in order to increase the amount of the plaintiff's damage recovery, and identify all evidence you will introduce to establish each such fact.

A. #9  Plaintiff claims as lost earnings those earnings he would have earned in the fourteen months following his injury but did not as a result of his injury. But for his injury, the Plaintiff would have continued to work for the Defendant through the end of August 2002, he then would have shipped out for four months with Maersk Lines Limited starting in September 02. He then would have been activated with his Naval Reserve Unit in February of 03 and would have served with that unit in until August, September or October of 03 (the unit had a staggered return). As a result of his injury the Plaintiff did not finish up the summer with the Defendant. As a result of his injury, surgery and recuperation the Plaintiff did not ship out with Maersk Lines Limited in September of 02. As a result of his injury, surgery, and recooperation the Plaintiff was placed upon "Temporary Not Physically Qualified" status effective August 23, 02. Accordingly the Plaintiff did not ship out with his unit in January of 03. The Plaintiff remained on "Temporary Not Physically Qualified" status until July of '03. Accordingly he did not

join his unit on active duty from Jan 03 through August-October 03.    Accordingly Plaintiffs wage loss is as follows:

July – August 2002    Approx. $ 2,500 working for Defendant

September –December 2002 Approximately $ 40,000 working for Maersk

February – September 03  Approximately $35,000 - $40,000 on active duty.

Total = $77,500 - $82,500

Minus earning July 03 – September 03  approximately $20,000 (primarily Wackahutt Security)

Total lost earning due to injury July 02 – September 03 = approximately $57,500 - $62500.

In support of this claim the Plaintiff relies upon the facts set forth above the testimony of the Plaintiff and his doctor as well as the documents provided to the Defendant.


Q. #10.Identify (including, without limitation, by identifying the parties, the docket number or other identifying number, and each and every lawyer who was involved in the matter) each and every lawsuit, arbitration claim, compensation claim, insurance claim, or any other claim for benefits of any kind (whether or not related to the Events) that was pending and unresolved at any time during the Defined Time Period and:

   a.    that you have lodged, initiated or pursued, on behalf of yourself or anyone else; or

   b.    that anyone brought, lodged, initiated or pursued on your behalf; or

   c.    in which you participated in any way;

and separately identify (including, without limitation, by identifying each and every lawyer who was involved in the matter) each and every occasion in which you have given any testimony (even if you were not a Plaintiff or beneficiary), whether in a deposition, at trial, in any arbitration proceeding or in any administrative proceeding, or by giving any sworn written testimony such as an affidavit or declaration or statement under the penalties of perjury.

A. #10.  Plaintiff objects to interrogatory #10 on the basis that it is overly broad does not make much sense and requests a lot of totally irrelevant information.  Without waiving said objection the Plaintiff has never previously sued anyone for a personal injury.  In connection with his injury on the Defedants vessel he did assert a disability claim on a disability policy he paid for himself

Q. #11. Describe in chronological order your education, beginning with high school, specifying each program of study with the institution, the dates, and the specialization or objective of the program of study.

A. #11.  1980-1984 North Branford (CT) High School
                High School education/college prep.
        1984-1988 Massachusetts Maritime Academy
                Bachelor of Science, Marine Transportation.
                -to prepare for a seagoing career in the US Merchant Marine, maritime
                  community or US Military.

Q. #12. Describe your military history in chronological order, identifying each individual assignment, the title of the position your occupied, and your job duties and responsibilities in it, the location of your duty site, the name and identifying number of the unit to which you were assigned, the military grade(s) you held at the time of the assignment, and whether the assignment was in an active duty status, or in some form of reserve status, and if so the specific reserve status involved.  Any assignment in a training status should be described to the level of detail set forth in the following interrogatory.

A. #12. Commissioned May 1994 as Ensign, US Naval Reserve and assigned to Merchant Marine Individual Ready Reserve Group. While assigned to MMIRRG in a reserve status, I served two weeks annual training a year in preparation for service to the US Navy as a professional mariner specializing in merchant ship operations in support of naval operations.
May 1998. Promoted to Lieutenant.
May 2002. Transferred to US Navy Military Sealift Command, Southern Persian Gulf. Served as Training Officer. In a reserve status, would drill one weekend a month and serve two weeks a year at the "Gaining Command". Upon Mobilization, would serve as Port Operations Officer within the Area of Responsibility as part of the Port Team in support of military operations.
Aug. 2002. Found Temporary Not Physically Qualified for service and not permitted to drill, train or deploy resulting from injury.
Dec. 2002. Unit and Port Team alerted for partial mobilization in support of Operation Enduring Freedom.
Feb. 2003. Port Team mobilized and sent to the port of Ash Shuyabah, Kuwait for pending operations against Iraq. Plaintiff unable to deploy with team as a result of the knee injury.

July 7th, 2003. Returned to full duty following review of medical records by Commanding Officer, Bureau of Medicine and Surgery. Deployed to Kuwait, in temporary duty status, for 17 days to assist Port Operations Team.

Dec 2003 Mobilized under Presidential Recall and deployed to Kuwait as Port Operations Officer until Nov 2004.

Jan 1, 2004 Promoted to Lieutenant Commander.

Dec 18th 2004. Released from Active Duty and return to reserve status.

Q. #13. Describe in chronological order any training you have received, specifying its date or dates, location, the topic, the providing organization or person, the person(s) bearing the cost of the same, and your purpose in undertaking the training. Nothing stated in respect to the previous interrogatory need be repeated.

A. #13.  Plaintiff objects to interrogatory #13 on the basis that is incredibly broad and overly burdensome given the Plaintiff's work history and the information already provided in response to interrogatories 11, 12, 15, and 16.

Q. #14. Describe in chronological order each and every period of internship, apprenticeship, cadet or midshipman experience, or trainee status (or the like), or of on-the-job training in which yhou were called upon to acquire some skill or body of experience, specifying its date or dates, the organization providing the experience, and your own duties, responsibilities, and learning obligations or objectives. Nothing stated in response to the previous interrogatory need be repeated.

A. #14.  Plaintiff objects to interrogatory #14 on the basis that is incredibly broad and overly burdensome given the Plaintiff's work history and the information already provided in response to interrogatories 11, 12, 15, and 16.

Q. #15. Describe in chronological order our work history, specifying each employer since the date you last attended high school, the place of employment, the dates of your employment, your rate of pay or compensation, the title of the position you occupied, and your job duties and responsibilities, and learning obligations or objectives. Nothing stated in response to Interrogatories 12 or 14 need be repeated.

A. #15. January 1989-October 1998  Exxon Shipping Company/SeaRiver Maritime Inc. Houston
    -Served as Deck Watch Officer and Person in Charge of Dangerous Liquid Transfer.
    -See Tax Returns for Salary information.
October 1998-to March 2002 Maersk Line Ltd (For US Navy)
    -Served as Chief Officer (Second in Command) aboard Military Sealift Command Cargo Vessels. Responsible for the safe loading, stowage and offloading of cargo, in charge of Ships Fire Brigade and Medical Officer.
    -Salary was approximately $9-10,000.00/month while onboard doing an approx. 4

months onboard at a time.

-March 2002 was my last shipboard employment prior to the injury. Next assignment was approx. Sept. 2002.

March 2002- July 2002  Hyannis Harbor Tours

-From March to June, served in the Maintenance Department preparing vessels for the summer ferry season. $9.00/hr. 40 hrs/Week

-June 2002 to July 26th. Served as Mate aboard Grey Lady II. Responsible for the safe embarkation/debarkation of guests and freight, Navigation Watches as well engineering operation and basic maintenance. $13.00/hr. 48-54 hours/week.

-July 26th while aboard the vessel at Nantucket conducting passenger/luggage transfer, injured right knee. Last day of employment.

Q. #16. Identify each and every license, permit, or other professional or employment related credential that you have ever held or applied for (including without limitation any Coast Guard merchant marine license and/or merchant mariner's document, and each successive level of either), and identify any disciplinary or other adverse action threatened, initiated (even if later abandoned), or taken against you with respect to any such credential.

A. #16  1) US Coast Guard License: Master of Ocean Steam or Motor Vessels of any Gross Tons upon Oceans. Original 1998. Renewed Feb 2003
2) Radar Observer, Unlimited. Original June 1988
3) STCW 95. Original 1998. Renewed Feb 2003
    - GMDSS
    - Person in Charge of Dangerous Liquid Transfer
4) Basic Marine Firefighting-US Navy/MARAD (1998)
5) Advanced Marine Firefighting-US Navy/MARAD (1998)
6) Marine Firefighting- Texas A&M University Engineering Extension (1995)
7) Marine Confined Space Safety-NFPA 1998
8) Shipboard Damage Control-US Navy 1998
9) Anti-Terrorism/Force Protection Officer- US Navy 1998
10) Shipboard Security and Engagement Tactics-US Navy 1998
11) Advanced Open Water Diver-1999
12) Commonwealth of Mass. License to Carry Firearms-Class A

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___13th___ DAY OF ___December___, 2004.

_____
THOMAS TREFRY

10

As to objections

Respectfully submitted for the
the Plaintiff, THOMAS W. TREFNY,
by his attorney,

David F. Anderson
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
(617) 523-1000

Dated 12/10/04

11